## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DIEGO AGUILAR ESPARZA, JOSE ENRIQUE ESPARZA GARCIA, ENRIQUE ESPARZA MACIAS, JOAQUIN GALVAN ESPINOZA, and JUAN MANUEL RODRIGUEZ CAMACHO, | : : : : : : | **COLLECTIVE ACTION COMPLAINT** <br><br> CIVIL ACTION NO. 26-CV-03711 |
| Plaintiffs, <br> v. | : : : : | |
| CRAMERS, INC., RALPH CRAMER, KEITH CRAMER, and ERIN CRAMER; <br> Defendants. | : : : | *Jury Demand* |

Plaintiffs Diego Aguilar Esparza, Jose Enrique Esparza Garcia, Enrique Esparza Macias, Joaquin Galvan Espinoza, and Juan Manuel Rodriguez Camacho (collectively, "Plaintiffs") on behalf of themselves and others similarly situated, by and through their attorney at the Pennsylvania Farmworker Project of Philadelphia Legal Assistance, allege as follows:

### PRELIMINARY STATEMENT

1. Defendants Cramers, Inc., Ralph Cramer, Keith Cramer and Erin Cramer (hereinafter "Defendants") utilized the federal temporary foreign agricultural worker program ("H-2A Program") codified at 8 U.S.C. §1188(a)(15)(H)(ii)(A) and 20 C.F.R. §655.110, *et seq.* to recruit and bring foreign workers, including Plaintiffs, from Mexico to work at its flower growing and harvesting operation in Lancaster County, Pennsylvania. Defendants entered employment contracts with Plaintiffs, the terms of which were primarily dictated by federal regulations.

1

2. Plaintiffs entered the United States pursuant to the H-2A Program and traveled to Pennsylvania to work for Defendants based on Defendants' promises that they would abide by the requirements of the H-2A Program. The specific terms promised include, *inter alia*, that Plaintiffs would be employed for a certain number of months, receive free housing and transportation, and be offered 35 hours of work per week (with the exception of the 2025 season when they were promised that they would be offered 40 hours of work per week).  During each of the 2022–2025, seasons, Defendants breached these provisions.

3. Defendants, *inter alia*, failed to comply with health and safety laws, failed to reimburse Plaintiffs for costs for the employer's benefit, and interfered with their exercise of rights under the H-2A program. Defendants failed to pay Plaintiffs the sums due to them under their contract and/or the federal regulations set forth at 20 C.F.R. §655.122.

4. Defendants intentionally misrepresented the terms and conditions of employments as well as the number of hours of work actually offered to Plaintiffs.

5. Plaintiffs bring this action to redress the violations of their rights under the Fair Labor Standards Act and regulations governing the H-2A program, 20 C.F.R. §§655.100, *et seq.*, and as incorporated in their employment contracts.

6. Plaintiffs seek an award of money damages to make each of them whole for damages suffered because of Defendants' violations of the law and contractual breaches.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1337; 29 U.S.C. § 216(b) (the Fair Labor Standards Act) and 8

U.S.C. § 1188 and the regulations set forth at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.45 and 20 C.F.R. §653.100, *et seq.* (the Immigration and Nationality Act).

8.   This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claims.

9.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b). Defendants reside within, do business in, and committed the unlawful acts alleged in this complaint within the Eastern District of Pennsylvania.

**PARTIES**

10.   Plaintiff Diego Aguilar Esparza came to Pennsylvania from Mexico as an H-2A worker in 2022, 2023, 2024 and 2025 to work for the Defendants.

11.   Mr. Aguilar Esparza is a citizen and resident of Mexico. Mr. Aguilar Esparza's consent to join this lawsuit is attached as Exhibit A.

12.   Plaintiff Jose Enrique Esparza Garcia came to Pennsylvania from Mexico as an H-2A worker in 2024 to work for the Defendants.

13.   Mr. Esparza Garcia is a citizen and resident of Mexico. Mr. Esparza Garcia's consent to join this lawsuit is attached as Exhibit B.

14.   Plaintiff Enrique Esparza Macias came to Pennsylvania from Mexico as an H-2A worker in each year from 2016–2019 and again in each year from 2021–2025 to work for the Defendants.

15. Mr. Esparza Macias is a citizen and resident of Mexico. Mr. Esparza Macias' consent to join this lawsuit is attached as Exhibit C.

16. Plaintiff Joaquin Galvan Espinoza came to Pennsylvania from Mexico as an H-2A worker in each year from 2019–2025 to work for the Defendants.

17. Mr. Galvan Espinoza is a citizen and resident of Mexico. Mr. Galvan Espinoza's consent to join this lawsuit is attached as Exhibit D.

18. Plaintiff Juan Manuel Rodriguez Camacho came to Pennsylvania from Mexico as an H-2A worker in each year from 2019-2025 to work for the Defendants.

19. Mr. Rodriguez Camacho is a citizen and resident of Mexico. Mr. Rodriguez Camacho's consent to join this lawsuit is attached as Exhibit E.

20. Defendant Cramers, Inc. is a domestic, for-profit corporation located and registered at 692 Kraybill Church Road, Mount Joy, Pennsylvania.

21. Cramers Inc. was at all times relevant to this complaint a fresh flower farm selling to wholesale florists, distributors, seed companies and other commercial growers.

22. Defendant Ralph Cramer is a domestic, for-profit company located and registered at 694 Kraybill Church Rd., Mount Joy, Pennsylvania.

23. Defendant Keith Cramer is an individual believed to be domiciled at 692 Kraybill Church Rd., Mount Joy, PA 17522. He is the President and Owner of Cramers, Inc. and Ralph Cramer. He employed Plaintiffs at all times relevant to this complaint.

24. Defendant Erin Cramer is an individual believed to be domiciled at 692 Kraybill Church Rd., Mount Joy, PA, 17522. She employed Plaintiffs at all times relevant to this complaint.

**STATEMENT OF FACTS**

*The H-2A Visa Program*

25.     Employers seeking the admission of H-2A workers must first file Form ETA-9142A Application for Temporary Labor Certification ("H-2A Application") for the U.S. Department of Labor ("DOL") to review and approve. 20 C.F.R. § 655.130.

26.     The H-2A Application must include a job offer, commonly referred to as a "clearance order," complying with applicable regulations. The clearance order is used in the recruitment of both U.S. and foreign H-2A workers. 20 C.F.R. § 655.121(a)(1).

27.     The essential terms of the clearance order are dictated by federal regulations at 20 C.F.R. §§ 655.120, 655.122, and 655.153.  The clearance order includes various assurances that the employer will abide by applicable legal requirements, including:

   a.  The requirement to pay all workers at least the adverse effect wage rate (AEWR)[1], the prevailing wage rate, or the minimum wage rate—whichever is highest—for the job. 20 C.F.R. § 655.122(l).

   b.  The requirement to provide or pay for transportation and subsistence from the worker's hometown to the place of employment if the worker completes 50% of the contract period. § 655.122(h)(1).

   c.  The requirement to provide or pay for reasonable costs of outbound transportation, and subsistence, from the place of employment to the worker's hometown if the worker completes the contract period. § 655.122(h)(2).

---

[1] The DOL Office of Foreign Labor Certification publishes the AEWR for each state on a yearly basis. 20 C.F.R. § 655.120(c).

d. The employer must guarantee to offer the worker employment for a total number of hours equal to at least three-fourths of the workdays in the contract, beginning with the worker's first day of work, or pay the worker an amount equivalent to what the worker would have earned had the worker worked the guaranteed number of hours. 20 C.F.R. §6555.122(i) (hereinafter "Three-Fourths Guarantee").

e. The employer must also set forth in the clearance order specific material terms and conditions of the employment, including: the nature of the work, the period and hours of employment, the starting and ending dates of employment, and a guarantee of work. 20 C.F.R. 653.510(c)(iv).

28. Additionally, the federal regulations require an employer using the H-2A Program to make and include in the clearance order the following assurances:

a. The requirement to comply with all applicable federal, state, and local laws and regulations. § 655.135(e).

b. That it has not and will not intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against, and has not and will not cause any person to intimidate, threaten, restrain, coerce, blacklist or in any manner discriminate against any person who has filed a complaint, instituted any proceeding, testified, consulted with legal aid, or exercised any right or protection pursuant to the H-2A program and its regulations. 20 C.F.R. § 655.135(h).

29. The terms of the clearance order, along with the certified application for temporary employment certification, constitute the contract between the agricultural employer and the foreign H-2A workers. 20 C.F.R. § 655.122(q).

***Defendants' H-2A Employment Contracts with Plaintiffs***

30.     In each year between 2022 and 2025, Defendants filed temporary labor certification applications with DOL seeking to bring H-2A workers to work at its operations in Mount Joy, Pennsylvania.

31.      As part of the temporary labor certification application described in Paragraphs 25–29, Defendants submitted a clearance order each year which contained, *inter alia*, Defendants' certification that the order described the actual terms and conditions of the employment being offered and contained all material terms of the job as required by 20 C.F.R. § 653.501(c)(viii).

32.     The clearance order for 2022, Clearance Order H-300-21350-770441 offered employment from March 1, 2022 through November 8, 2022 at a rate of $14.05 per hour, 35 hours per week. It was approved by DOL and functioned as an H-2A employment contract between Defendants and their farmworkers in 2022, in accordance with 20 C.F.R. § 655.122(q).

33.     The clearance order for 2023, Clearance Order H-300-22339-621340 offered employment from February 15, 2023 through November 8, 2023 at a rate of $15.54 per hour, 35 hours per week. It was approved by DOL and functioned as an H-2A employment contract between Defendants and their farmworkers in 2023, in accordance with 20 C.F.R. § 655.122(q).

34.     2024's clearance order, Clearance Order H-300-23306-473636 offered employment from January 15, 2024 through November 8, 2024 at a rate of $16.55 per hour, 35 hours per week. It was approved by DOL and functioned as an H-2A employment contract between Defendants and their farmworkers in 2024, in accordance with 20 C.F.R. § 655.122(q).

35.     In 2025, Clearance Order H-300-24365-576244 offered employment from March 12, 2025 through November 8, 2025 at a rate of $17.96 per hour, 40 hours per week. It was

approved by DOL and functioned as an H-2A employment contract between Defendants and their farmworkers in 2025, in accordance with 20 C.F.R. § 655.122(q).

36.    Each year's clearance order contained, *inter alia*, Defendants' certification that the order described the actual terms and conditions of the employment being offered and contained all material terms of the job as required by 20 C.F.R. § 653.501(c)(viii).

37.    In or about early 2022, Defendants recruited Plaintiffs Aguilar, Esparza Macias. Rodriguez and Galvan from their homes in Mexico and hired them to work at their farm in Mount Joy, Pennsylvania under Clearance Order H-300-21350-770441.

38.    In or about early 2023, Defendants recruited Defendants recruited Plaintiffs Aguilar, Esparza Macias. Rodriguez and Galvan from their homes in Mexico and hired them to work at their farm in Mount Joy, Pennsylvania under Clearance Order H-300-22339-621340.

39.    In or about early 2024, Defendants recruited Defendants recruited Plaintiffs Aguilar, Esparza, Esparza Macias, Rodriguez and Galvan from their homes in Mexico and hired them to work at their farm in Mount Joy, Pennsylvania under Clearance Orders H-300-23306-473636 and H-300-24114-915315.

40.    In or about early 2025, Defendants recruited Plaintiffs Aguilar, Esparza Macias, Rodriguez and Galvan, from their homes in Mexico and hired them to work at their farm in Mount Joy, Pennsylvania under Clearance Order H-300-24365-576244.

41.    In each relevant year, recruited Plaintiffs accepted Defendants' offer of employment.

42.    In each year that a Plaintiff accepted Defendants' offer of employment, that Plaintiff was issued a H-2A visa for employment with Defendants for the duration of the term of offered employment.

43.     In exchange for Defendants' promise of work, in each year Plaintiffs left their families behind, incurred personal expenses and traveled hundreds of miles to Defendants' jobsite in Pennsylvania.

***Defendants' Failure to Pay for Plaintiffs' Transportation and Subsistence***

44.     In each year they labored for Defendants, each Plaintiff paid for travel from their home in Guanajuato, Mexico to Monterrey, Mexico where they presented for interviews at the U.S. Consulate as part of the processing of their H-2A visas.

45.     In each year they labored for Defendants, each Plaintiff was required to stay at a hotel in Monterrey, Mexico while they awaited the processing of their H-2A visas. Plaintiffs bore this cost.

46.     In each year they labored for Defendants, each Plaintiff paid for their own subsistence costs during their inbound travel. In some years, Defendants provided a small reimbursement to Plaintiffs for these costs.

47.     After their consular interviews each Plaintiff traveled from Monterrey, Mexico to Mount Joy, Pennsylvania. Defendants arranged and paid for this travel. When Plaintiffs arrived in Pennsylvania, Defendants required each Plaintiff to reimburse them a flat amount of cash for this travel cost.

48.     Defendants provided Plaintiffs reimbursement for inbound travel costs for the first time in the 2025 season. This reimbursement was less than the actual cost of Plaintiffs' inbound travel.

49.     Upon information and belief, in each year Plaintiffs labored for Defendants, Plaintiffs' inbound transportation and subsistence costs caused their first week's wages to fall below the minimum wages required by federal and state law.

*Defendants' Failure to Provide Promised Hours of Employment*

50.    When Plaintiffs arrived to work for Defendants, they were eager to work and accepted all hours offered to them. However, they were not offered the hours of work promised in their job contracts in all weeks.

51.    The lack of work was especially acute in the 2025 season. Plaintiffs' contract for 2025 offered 40 hours of work per week. Based on available information, Plaintiffs were offered an average of approximately 25 hours of work per week.

52.    At some point during their employment of Plaintiffs, Defendants began to make a notation on each of Plaintiffs' paystubs stating that Plaintiffs were offered 70 hours of work during the pay period.

53.    Defendants did not pay Plaintiffs wages equaling three quarters of the promised work hours in the contract.

54.    Due to Defendants' failure to provide the promised work, Plaintiffs Esparza Macias and Galvan were constructively discharged and returned to Mexico prior to November 2025.

55.    Defendants required Plaintiff Esparza Macias to sign a document stating that it was his decision to return to Mexico early, and refused to pay for his return travel unless he signed.

*Housing and Safety*

56.    Defendants provided worker housing for Plaintiffs that was not in compliance with federal, state and local standards.

57.    *Inter alia*, Defendants failed to provide the requisite number of working toilets, bathing facilities, laundry facilities required by OSHA standards, 29 C.F.R. §§ 500.132 *et seq*.,

the Pennsylvania Seasonal Farm Labor Act, 43 P.S. §§ 1301.101 *et seq.*, and Pennsylvania

Department of Agriculture housing standards, 7 Pa. Code § 82.20.

58.    Defendants failed to abide by pesticide safety regulations and EPA guidance by,

*inter alia,* spraying fields while workers are harvesting and failing to provide training, personal

protective equipment or to post adequate safety information. *See* EPA's Agricultural Worker

Protection Standard, 40 CFR 170.

### *Interference with Assertion of H-2A Rights*

59.    Upon information and belief DOL opened an investigation into Defendants' H-2A

program practices in or around 2023.

60.    Defendant Keith Cramer became aware that a DOL investigator would speak to

Plaintiffs as part of the investigation. He then instructed Plaintiffs not to speak to DOL about

Defendants' reimbursement practices.

61.    On another occasion when Defendant Keith Cramer observed Plaintiffs speaking

with an investigator from, upon information and belief, the PA Department of Agriculture, he

recorded the conversation with his phone. Plaintiffs understood this act to be a form of

intimidation.

62.    When Plaintiffs raised concerns that Defendants were not offering them the

promised hours of work, Defendant Erin Cramer told them that if they complained about not

being scheduled she would take it into account when making decisions about the future.

63.    Defendant Erin Cramer also told Plaintiffs that if they were involved in making

complaints about their work, they should not come back next year.

64.    Plaintiffs were not re-hired in the 2026 season.

11

## CLAIMS

### Count I: Fair Labor Standards Act

65.    Plaintiffs incorporate by reference all of the above-numbered paragraphs.

66.    At all relevant times, Defendants were employers of Plaintiffs within the meaning of the FLSA. 29 U.S.C. § 203.

67.    At all relevant times, Plaintiffs were employees within the meaning of the FLSA. 29 U.S.C. § 203(g).

68.    Defendants violated the FLSA by failing to pay Plaintiffs the minimum wage rate.

69.    Defendants' violation of the FLSA minimum wage requirement resulted from Defendants' failure to reimburse Plaintiffs for certain pre-employment costs that they incurred primarily for Defendants' benefit, which reduced Plaintiffs' wages below the minimum wage in their first workweek. 20 C.F.R. §655.122(h)(1); *Rivera Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 899 (9th Cir. 2013); *Arriaga v. Florida-Pacific Farms LLC*, 305 F.3d 1228, 1242-44 (11th Cir. 2002)

70.    Defendants knowingly or recklessly violated the FLSA.

71.    Plaintiffs are entitled to damages in the amount of unpaid minimum wages, liquidated damages in an amount equal to the actual damages, attorneys' fees, and costs associated with this action, pursuant to 29 U.S.C. § 216(b).

### Count II: Breach of Contract

72.    Plaintiffs incorporate by reference all of the above-numbered paragraphs.

73.    As detailed above, Defendants offered Plaintiffs employment contracts pursuant to the terms and conditions outlined in the H-2A Applications for Temporary Labor Certification and job orders.

12

74.    As detailed above, Plaintiffs accepted the employment contracts.

75.    Pursuant to the employment contracts, Defendants were required to comply with all applicable federal, state, and local laws and regulations.

76.    Pursuant to the employment contracts, Defendants were required to pay for Plaintiffs' reasonable inbound and outbound transportation and subsistence costs.

77.    Pursuant to the employment contracts, Defendants were required to offer workers employment "for a total number of work hours equal to at least three-fourths of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment or the advertised contractual first date of need, whichever is later, and ending on the expiration date specified in the work contract or in its extensions, if any." 20 CFR 655.122(i)

78.    Pursuant to the employment contracts, Defendants were required to keep accurate and adequate records and to furnish to workers written statements containing, among other things, the hours of employment offered to the Plaintiffs and the hours actually worked by the Plaintiffs.

79.    In the employment contracts, Defendants assured that all working conditions complied with applicable Federal and State minimum wage laws, health and safety laws, and other employment-related laws.

80.    Defendants breached the terms of the employment contracts.

81.    As a result of Defendants' breach of the employment contracts, Plaintiffs are entitled to recover unpaid wages, transportation and subsistence costs, and other damages available pursuant to Pennsylvania law.

### Count III: Fraud

82.    Plaintiffs incorporates by reference all of the above-numbered paragraphs.

13

83.     Defendants made material misrepresentations to Plaintiffs prior to their commencement of work in Pennsylvania including, but not limited to, the availability of work hours and repayment of travel and subsistence costs.

84.     Defendants also made material misrepresentations to Plaintiffs by stating on their paystubs that they were offered 70 hours of works.

85.     Such misrepresentations were made by Defendants with actual knowledge of their falsity, or in reckless disregard of its truth or falsity.

86.     The Plaintiffs were harmed by the material misrepresentations when, *inter alia*, after leaving their families behind and traveling to Pennsylvania to labor for Defendant, they earned less money than Defendants promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

87.     Declare that Defendants knowingly and recklessly violated the rights of Plaintiffs under the FLSA and Pennsylvania contract law;

88.     Award damages to Plaintiffs for unpaid minimum wages and statutory liquidated damages, in accordance with the FLSA;

89.     Award Plaintiffs damages for breach of contract;

90.     Declare that Defendants engaged in common law fraud and award actual and punitive damages related thereto;

91.     Award attorneys' fees and costs associated with this action to Plaintiffs; and

92.     Award such other relief as this Court deems just and equitable.

14

Dated: May 29, 2026

Respectfully submitted,


/s/Lerae Kroon
Lerae Kroon
PA Bar No. 325464
Philadelphia Legal Assistance
718 Arch Street, Suite 300N
Philadelphia, PA 19106
Telephone: (215) 981-3812
lkroon@philalegal.org

Attorney for Plaintiffs